Good morning. May it please the court, Tamar Pachter on behalf of the people of the state of California. Joining me at council table are Deputy Attorneys General Laura Zuckerman and Paul Stein who joined me on the brief. I'd like to reserve five minutes of my time for rebuttal. Just watch the clock. This is one of a series of suits arising from the California State Attorney General's investigation of the California energy crisis. But there is nothing peculiar to the energy crisis about these cases. What they state are garden variety cause of action for unfair competition. This conduct existed as early as 1998. The generators submitted false bids. They promised to hold power in reserve. They did not hold in reserve. And they sold power out of that As a result of this conduct, Californians were defrauded of millions of dollars for services that were never provided. The Attorney General filed these consumer protection cases in state court pursuant to state law on behalf of the people of the state of California. They were removed to federal court. For the past year, we have been largely litigating the issue of why these cases are removed from federal court. And the Attorney General submits, this issue is dispositive of this case. The federal court never should have asserted jurisdiction over these cases. Federalism, the balance of power between the states and the federal government, is what is at issue in these cases. The district court was bound to interpret its removal jurisdiction narrowly. It interpreted it broadly. The district court was bound to interpret the preemptive effect of federal law narrowly. It interpreted it broadly. The orders of the district court must be reversed in order to restore the proper balance. Counsel, it seems to me you may have an uphill battle here because of a lot of court decisions over time. Our recent decision in SPARTA, our decision in Duke Energy, TANC, all seem to point toward federal preemption either on a theory of exclusive jurisdiction or under some other preemptive theory. I think you need to be sure and address those cases because I think some of us find them troubling from your point of view. Absolutely, Your Honor. First of all, the removal statute 1441 provides that the case cannot be removed unless it could be brought in federal court. No one has argued, no one has argued in this case that the Attorney General could have brought the suit originally in federal court. That's number one. Number two, the Supreme Court has recently affirmed earlier decisions in which it has held that there are only two circumstances under which a state cause of action may be removed to federal court on grounds of federal question jurisdiction. Those two are express preemption, which no one has argued is true in this case, and complete preemption, which, again, no one has argued exists in this case, primarily because there is no federal cause of action that could have been brought on behalf of the people of the State of California to address the consumer protection issues raised by these cases. Neither Duke nor the other cases that Your Honor referred to address that other than for SPARTA. SPARTA is problematic, but we believe it can be limited to the 1934 Act. SPARTA held that due to an exclusive jurisdiction clause, the federal court had federal subject matter jurisdiction over the claim, even though only state causes of action were alleged in that case. The state causes of action that were alleged were for against the NASD for violation of its own rules. In Pan American, however, the Supreme Court ruled that an identical provision under the NGA, which is treated identically for purposes of statutory interpretation as the FPA, did not provide a federal cause of action. To that extent, SPARTA is distinguishable from this case. In addition, SPARTA stands at odds with Beneficial and a series of Supreme Court cases prior to Beneficial that strongly indicated there are only two circumstances under which that removal could occur, neither of which was the case in SPARTA. Well, I thought Beneficial held that the National Banking Act preempted the state claims. It did, Your Honor. But in that case, the National Bank Act provided a federal cause of action for usury claims against national banks. What the Court said in that case is it would not be enough for the conduct to have violated Section 85 of the Act. It was also necessary to find that Section 86 provided a federal cause of action demonstrating clear congressional intent to preempt state causes of action. In fact, what the Court said in that case was that it was not enough to find that federal intent was to remove state causes of action, that the Court had to be able to find that Congress's intent was to provide the exclusive cause of action for violation of state law. Even if Beneficial was not dispositive on this question, under the precedence of this circuit prior to Beneficial, namely Duncan and Ultramar, these cases would not be removable. The causes of action stated in these complaints rely on state law as well as federal law. There's only one cause of action pled in each complaint. Each of them has three independent basis for recovery, any one of which would support the cause of action stated claim. Two of those are exclusively based on state law and have nothing to do with any federal law. The third, under the unlawful prong of Section 17-200, is predicated on a violation of the tariff. Under Duncan, if there is one ---- What is taking the tariffs cause of action alone? That has traditionally been either because of filed-rate doctrine or any number of cases over the years makes this an exclusive jurisdiction for the FERC, does it not? No, Your Honor, it would not. Issues of the tariff, as you say, might go to the filed-rate doctrine, which would be a defense on the substantive merits of the claim, but it would not establish the jurisdiction of the federal courts to entertain the claim in the first place. Have I answered your question? Not satisfactorily, but you certainly have answered it. Your Honor, I think the cases that you are referring to don't, in fact, establish that the federal courts can take jurisdiction. For instance, this Court ruled in Brown v. MCI that the plaintiff could pursue a cause of action for violation of the tariff to recover charges that were made in excess of the tariff rate. So I think there is a substantial body of law showing that these cases can move forward. One of them, a Supreme Court case, this ARC law, a case that, though it was found the filed-rate doctrine barred the remedy, proceeded in State court, and there was no mention made that that case could never have been brought in State court. So I think there is a substantial body of law showing that even though there may be a defense based on the filed-rate doctrine or on federal preemption, which we claim would not prevail here, those defenses do not create federal jurisdiction. To return to Duncan, Your Honor, under that case, having a single State law theory to support the claim will be enough to take the case out of the realm of federal jurisdiction. Under the well-pleaded complaint rule, the plaintiff is permitted to avoid federal jurisdiction in this way, and that is exactly what the Attorney General did in this case by asserting State law claims pursuant to a State statute. No one in this case argues that a claim was not stated pursuant to California law. No one argues that a claim under 17-200 can't be stated without reference to federal law. The claim that the generators have made in this case is that because a market exists pursuant to a federal tariff, the tariff creates federal jurisdiction. Now, the tariff is not an expression of congressional intent. It's a regulatory expression. That expression cannot expand the jurisdiction of the courts beyond that which Congress has allowed. If you get beyond the question, the dispositive question of whether the district court had subject matter jurisdiction in this case, the Court must next address the argument that sovereign immunity, as embodied in the Eleventh Amendment to the Constitution, was a limit on the Article III jurisdiction of the district court. Sovereignty is not about efficiency or convenience. It is about recognizing the dignitary interests of the States as sovereigns in the federal system. Well, the Eleventh Amendment, as I read it, simply protects the States from being sued against. Here, it's the States that's the plaintiff. So how can you plead Eleventh Amendment? Well, Your Honor, a long line of Supreme Court cases dating from Hansby, Louisiana, have held that we are not limited to the literal terms of the Eleventh Amendment in determining the scope of the State's sovereign immunity. We have to look at the structure of the Constitution and the causes of action at the time the Constitution was adopted that could have been brought against the State absent a waiver of its sovereign immunity. One manifestation of the State's sovereign immunity is the privilege to avoid a federal tribunal. In the Eleventh Amendment, that's stated in terms of the State being sued. But it is no less applicable when the State's case, filed pursuant to State law in State court, is involuntarily removed without its consent. What that does is subject the State to the presumption of sovereign immunity. The presumption of sovereign immunity is that the State is free to choose. The privilege of sovereignty is the privilege to choose in what forum its disputes will be resolved. That's what the State did here. It chose to be sued in federal court. But surely, you certainly have the right to choose, but surely if you choose to bring suit in federal court or you're in federal court, it seems to me that you don't have much of an Eleventh Amendment argument left. You've waived it, have you not? No, we haven't brought suit in federal court, Your Honor. If I said that, I misspoke. The cases were filed in State court. We have not availed ourselves of the jurisdiction of the federal court. True, but you are the plaintiff. Yes. All right. And the case has been removed to federal court under an assertion of federal jurisdiction, which obviously is an issue. But nevertheless, it seems difficult for me to understand how the State can invoke the Eleventh Amendment under these circumstances. Your Honor. Circumstances being that the State is the plaintiff. And as a matter of fact, as I look at some of the cases, it seems to me, going back to the 1880s and then as recently as 1972, where a State is suing parties who are not other States, the jurisdiction of the court is not exclusive, and those States may now be brought in or removed to the circuit or district courts. Your Honor, that language goes back to Ames. And that case was not a sovereign case in which a suit brought by the State of Kansas was removed to the circuit court pursuant to the Act of 1875, which established federal question jurisdiction and removal jurisdiction. In that case, the State of Kansas did not object to removal, per se, to the federal courts. What it objected to was removal to the circuit court rather than pursuant to the original jurisdiction of the Supreme Court. Later in Hans v. Louisiana, we have a true sovereign immunity case. Later we have Illinois. In Hans, there's no discussion of Ames because Ames was not a sovereign immunity case. In Illinois, there is discussion of Ames. In that case, the State brought suit in federal court, and the question was whether the State of Illinois could sue pursuant to the Supreme Court's original jurisdiction some municipalities of another State. And the Ames language was used in Illinois to indicate that removal or jurisdiction is without regard to the character of the parties. That doesn't address the question of sovereign immunity and the limitation of sovereign immunity on the Article III authority of the courts. So Ames and Illinois have not decided this issue. This Court has not decided the issue. And the issue must be decided pursuant to the sovereign immunity precedence of the Supreme Court. Your Honor, I'd like to reserve the rest of my time. Roberts. You may do so, counsel. Mr. Houlihan. Thank you, Your Honor. Terry Houlihan of Bingham McCutcheon, representing the appellee Reliant Energy and the other appellees for purposes of argument. Your Honor, in a sense, stole my opening line with your opening question, which is that if we get to the merits, the merits of the merits of the merits of the merits of the MRC and the MRC, the after the sentence, even in the original conditions, there is omission. However, the District Court correctly found that there are two separate but related grounds for dismissal, preemption and the filed rate doctrine. That both defenses apply and follow necessarily from the straight forward application of recent decisions of this Court dealing with industries and the filed rate doctrine case decided in 1997. Tank, Duffy Davis and PG&E, I think, established the defenses that the District Court relied on here. Given that the law and the merits is both extensive and established, the main controversy appears to be over jurisdiction. On a jurisdictional issue, as with the merits, all we ask the Court to do is apply established law of this circuit, specifically the law enunciated in the Sparta surgical case. Now, you heard Ms. Pachter's critique of Sparta. What is your response? Well, let's, first of all, it's important to understand what Sparta decided, which is specifically that even where claims are stated in state law terms, if the complaint seeks relief, quote, based in part upon, close quote, a purported violation of the NASD rules, then it falls within the exclusive jurisdiction provision of the Securities Act at issue there. According to this Court, quote, because Sparta's complaint sought relief based upon violation of federal exchange rules, subject matter jurisdiction was specifically vested in the Federal District Court, close quote, by, in that case, 15 U.S.C. Section 78 AA. That appears at 159 Fed 3rd, 211. The jurisdictional provision considered in this case is essentially identical to the one in the Federal Power Act on which the defendants rely here. Ms. Pachter says we should limit Sparta strictly to the securities field. Well, there's no rationale for doing that. As I pointed out, the jurisdictional provisions are identical. And the other important point, also conceded by the Attorney General, is that their complaint, in part, seeks relief based on a violation of a federal statute. So there's no logical distinction between the theory advanced here and the theory advanced in Sparta. Now, what about beneficial bank? Does that change the equation? Well, let's note, first of all, that the jurisdictional statute that we rely on is not does not contain the language about a claim arising under federal law. What the statute says, and this is 16 U.S.C. Section 825P, is that the District Courts of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder and of all suits in equity and actions at law brought to enforce any liability or duty created by or to enjoin any violation of this chapter or any rule, regulation, or order thereunder, close quote. In other words, we're outside the standard federal question jurisdiction arena, and in the arena we're Congress has passed a special jurisdictional statute giving federal courts jurisdiction to do over any suit in equity or action at law seeking to enforce any duty created by a regulation under the Federal Power Act. That includes tariffs. Well, let's take the plaintiff's strongest statement of its case is that these defendants are guilty of fraud, common law fraud, right? And alleging that that fraud constitutes a violation of the California Consumer Protection Statute. Now, it wouldn't take any of the regulations or statutes relating to Federal Energy Commission to make that a cause of action. That's a cause of action that is created either by common law or by the statutes of the state of California. And so if we just were to focus on that, that claim, surely these defendants are not immune from some claim of common law or statutory fraud just because they can say, well, while we were doing that, we were violating the rules of FERC, or we were violating a tariff. We can't be subjected to your claim of common law fraud because all of the common law fraud that you're going to prove is also going to be a violation of all these other statutes that somebody else has jurisdiction of. Now, is that too narrow a statement of what they've come up with? I think it is a bit too narrow, but even if the situation were as narrow as you posit it, my answer would be they are immune. And you've already decided that issue in both in Tank in particular, because there were fraud claims in Tank that explicitly were found to be barred by the preemption and filed rate defenses that we raised here. Now, that would take total preemption to do that, would it not? Total preemption in the sense of a defense, yes. Whether it would take complete preemption sufficient to justify jurisdiction under that theory is a different question. Stripping the state court of jurisdiction of state law claims, because in order to prove the fraud, they're going to have to prove they violated the federal law. And they can get away with fraud as far as staying out of state court. As long as in doing so, they violate federal law. Well, the answer is that in this area, the remedy for the fraud according to Tank is with FERC, not with the state courts. And so the answer is yes, that's precisely what Tank holds. The other thing I would say is that as a practical matter, if you look at the tariff and the way in which the bar is set up, the way in which the bar is set up, the way in which the market operates under the tariff, in order to establish fraudulent conduct, you really have to look at what the tariff directs, authorizes, how it defines the way in which the market works. The core issue of fraud would have to be assessed in light of the language of the tariff and the way that the market operates. Isn't one of the allegations of fraud that they were selling power or reserving capacity that they never intended to abide by? They're entering into a contract they had no intention of obeying. Right? That's what they're accused of. And they say, well, we can prove that that claim fails because we violated FERC. And so that claim can't, surely can't fail if the fact is that they were contracting to do things that they had no intention of doing. But when you get into the facts, the determination is going to be whether or not what they were doing was intentional, doing what was alleged or something else. That's governed by the tariff. There are no facts in this case other than the plaintiff's claim. I'm simply making the point that as a practical matter. As a practical matter, but as a legal matter, there are no facts of this case other than what are in the plaintiff's complaint. That's certainly true. And as a legal matter under Tank, it's for FERC to adjudicate the question of whether a party acted improperly under the tariff. I would direct your honor to the discussion in Tank at 295 Fed 3rd at page 928, where the plaintiff's claim is that the plaintiff had no intention of doing things that they had no intention of doing under the tariff. And the court is discussing the tort and property claims that were asserted in that case. And according to the court, quote, what Tank seeks to achieve by its tort and property claims would defeat the entire purpose of exclusive federal regulation there of interstate transmission of electricity. Quote, FERC alone, subject to court review of its final decision, can modify that decision on allocation, and here's the rest of the language, or deal with any party who operates the altruist intertie improperly, close quote. These are issues for FERC, not for states. Let me go back to the jurisdictional issue, rather than the defense, if I may. We were talking about the exclusive jurisdiction provision in the Federal Power Act. Essentially, the AG's argument is that Beneficial Bank holds that state law claims can be removed in only two circumstances. When Congress expressly so provides, or there is complete preemption. They draw that principle from Beneficial Bank. SPARTA authorizes clearly removal in a separate circumstance. It says if there's a special jurisdictional statute like this, you can remove, there's a necessarily federal question presented. Why is Beneficial not inconsistent with SPARTA? Two reasons come immediately to mind. First, the cases interpret different statutes. The entire framework of the well pleaded complaint rule, and the complete preemption exception to that rule, is simply a way of determining when a case arises under federal law for purposes of establishing jurisdiction under 28 U.S.C. section 1331. For example, the discussion of the Supreme Court in Merrill Dow points this out, 478 U.S. at 807 to 809. Beneficial Bank is an arising under case. Jurisdiction there was based on 28 U.S.C. section 1331. That point is made by Justice Scalia in dissent at 123 Supreme Court at 2065, but it's not a case that's been brought to the Supreme Court. It's not disputed. SPARTA, by contrast, finds jurisdiction under 15 U.S.C. section 78 AA, and here, of course, the jurisdiction is under the companion provision of the Federal Power Act. And they just read differently, and therefore the issues that the Court was addressing in Beneficial Bank are not the same. All right, but suppose we were relying in part on 1331. The AG misreads the Beneficial Bank dictum only. It can't mean what they argue that it means. Even if this were a section 1331 case, under many Supreme Court statements of the well-pleaded complaint rule for those arising under cases, the Courts have jurisdiction to hear, quote, cases in which a well-pleaded complaint establishes either that Federal law creates the cause of action, or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of Federal law, quote. That's from Franchise Tax Board 463 U.S. at 2728. But that's just an example of a number of cases. On at least three occasions, the Supreme Court expressly upheld removal under the well-pleaded complaint rule, where the plaintiff's cause of action was created by State law, but required the resolution of a substantial Federal question, and was not within the complete preemption line of cases. The most recent of these is the one that I think is the most significant. City of Chicago v. International College of Surgeons, I'm not sure this is in the brief, 522 U.S. 156-164, a 1997 case. The older cases in this line are Smith v. Kansas City Title and Trust Company, 255 U.S. 180, and Hopkins v. Walker, 244 U.S. 486. Go ahead. Have you cited those cases in your brief? I didn't check to see if these were in the brief. Since the issue came up in their reply brief, if they're not in the letter that I sent to the Court in response to the Attorney General's Rule 28-F letter, then they've probably not been cited to the Court. Well, then I would ask that you notify your opposing counsel, as well as the Court, as to those cases which have not already been drawn to our attention. I'll do that. Interpreting beneficial bank as abolishing the raises a substantial Federal question rule, and limiting removal to complete preemption situations, would mean that the Supreme Court had silently overruled its 1997 holding in International College of Surgeons, as well as the older cases, Smith and Hopkins. This would mean that Justices Rehnquist, O'Connor, Kennedy, Souter, and Breyer, who all joined in the International College of Surgeons' opinion, and joined the majority opinion in beneficial bank, reversed themselves without comment in the span of six years. That's more than enough. Well, then, what's happened? How does one explain the only language in beneficial bank? I think the answer is that the complete preemption exception to a well-pleaded complaint applies when, as in beneficial bank, the current language is that the complaint, quote, does not refer to any Federal law, close quote. That appears in 123 Supreme Court at 2016. If that's the situation, if there's no reference to Federal law, and the plaintiff is not in any way relying on a Federal rule or regulation, then perhaps you either have to say there's complete preemption, or come up with a special removal statute, if jurisdiction is based on the arising under Federal question jurisdiction provision originally. Here the complaint, however, does refer to Federal law, just like the complaint in Sparta. Violations of the ISO tariff are alleged as one basis for the State law cause of action. So the plaintiff is not relying exclusively on State law, as in beneficial bank. In beneficial bank, the Court doesn't purport to overrule the precedence that establish that a case that rises under Federal law, when the complaint relies in part on Federal law, and thus raises the question of whether the resolution of a State created cause of action necessarily involves a substantial question of Federal law. Sparta, this Court's decision in ARCO, in this case, present the problem of what do you do if the complaint does mention a Federal issue, not the situation dealt with in beneficial bank. If Your Honor prefers, we would be willing to submit a letter brief on this issue, since it did come up fairly late in the process. I think that the affirmative defenses on which we rely are well established in the briefs. The 11th Amendment was discussed at some issue, at some length. Let me just say on that issue that I think that the AG's argument in reply is that Ames considered only whether the complaint does mention a Federal issue. That is, whether the Court's jurisdiction over suits brought by States was exclusive, and didn't find any indication of the opinion in Ames that the central issue here, the propriety of removal, was addressed in the case. That's from the reply brief at page 17. The Supreme Court in Ames states at page 459 of 111 U.S., the questions presented for consideration. One is whether a suit brought by a State in one of its own courts against a corporation can be removed to the Circuit Court of the United States. And that's at page 462. And it begins its analysis by noting that the removal statute is broad enough to cover such a case as this, quote, unless the language is limited in its operation by some other law or by the Constitution, close quote. That's at page 463. The Court then concludes that there's no such limit in the Constitution and upholds removal jurisdiction. Every case we've cited in the brief that's considered Ames and the later case have concluded that the 11th Amendment does not bar removal where the State is a plaintiff. Thank you, counsel. Thank you. Thank you, Your Honor. First, to the extent it's not made clear in the brief, the Attorney General has not conceded that the defenses asserted by the generators are, in fact, effective. We have large disputes about what the scope is of first authority and to what extent either field preemption, conflict preemption, or the filed-rate doctrine. And I think that the Attorney General's position would be successful as affirmative defenses to these suits. The cases to which Mr. Houlihan cited, Tank and Duke, are cases in which there was a direct conflict with a FERC order. In this case, we have a cause of action that is fully consistent with a FERC order that has already determined the very conduct alleged is in violation of the tariff. There's no conflict here. And I think that the Attorney General's position is that there are very good reasons for that process to be done in that case. But aren't you conceding in that argument, 825G, exclusive jurisdiction of FERC? Absolutely not, Your Honor. In fact, Mr. Houlihan is ---- jurisdiction of violations of this chapter of the Federal Power Act, or the rules, regulations, or orders thereunder. That's pretty broad. If you're talking about interpreting tariffs? It's very broad language, Your Honor. But what the Supreme Court held in Pan American is that jurisdiction is only exclusive for causes of action that arise under the Act. There is no cause of action here that arises under the Act to vindicate the consumer protection claims asserted by the Attorney General. That is squarely at odds with the interpretation of SPARTA that the generators are urging here. There is no cause of action under the FPA that could have been alleged. That is why SPARTA does not apply. This is clear from a long line of Supreme Court cases. I'm not familiar with the City of Chicago case that Mr. Houlihan mentioned, but I am familiar with Smith and Hopkins. Smith was a case which was a facial constitutional challenge. A facial constitutional challenge to a Federal statute is always arising under, period. So I think we can take that case out of the running. The Hopkins case was a case in which it was essentially a quiet title action, in the sense that the entitlement was based on a construction of the Federal mining laws. I can't distinguish that case other than the case is so old, it's difficult to determine whether there was a Federal statute that authorized a cause of action or not in that case. The jurisprudence of the Supreme Court on this matter has changed significantly over time. However, in a long line of cases, Franchise Tax Board, Caterpillar, Gully, Rivet, Holmes v. Vornado, the Supreme Court has emphasized over and over again the significance, particularly the significance in terms of Federalism concerns, of enforcing the well-pleaded complaint rule, and in particular, of not involuntarily removing State cases based on State law from State court to Federal court, where it is not necessary. Even if Mr. Houlihan is correct, his argument would fail because there is nothing necessarily Federal about this claim. Even if the Attorney General were to drop the unlawful prong, which is based on the tariff, in part, he could prevail on the 17-200 claims simply on the basis of the allegations as to unfair and fraudulent conduct. So under this Court's precedence in Ultramar and Duncan and Wander and Utley, it's not necessarily Federal. There's no basis for Federal jurisdiction. So even if Beneficial didn't govern, and its language is certainly broad enough to cover the situation, the earlier precedence of this Court would clearly establish that the Federal court was without jurisdiction to hear these claims. Unless there are any other questions, Your Honor? You, in your opposition to the suggestion that there be a stay, you characterize this as law enforcement action. Yes. Now, in that context, there are quite a number of cases that can be removed, am I right, from State court. If you were to prosecute certain individuals, let's say a State official, that would be removable to the Federal court, would it not? So the Eleventh Amendment doesn't bar all removal. You're not arguing that, are you? No, if Your Honor is referring to younger, yes, there are certain situations in which State officials can be sued prospectively in Federal court. No, but I'm talking about the removal of the State, of a State's case, a State's law enforcement case to the Federal court. You're not arguing that the Eleventh Amendment prevents all removal of every case in which the State is a plaintiff. Your Honor, I had not thought about it in terms of younger, but the answer to your question is, you're not arguing that the Eleventh Amendment prohibits all removal where the State is a plaintiff. We couldn't do that. There's a Fourteenth Amendment implied consent of the States. There are many situations in which. I'm not talking about implied consent or anything else. I'm just talking about the position of the sovereign State in certain of its litigation, its law enforcement particularly. There are lots of cases that are removed. And you're not arguing here that the Eleventh Amendment, simply because of its language, prevents a removal of any case in which the State is a plaintiff. Your Honor, I'm not familiar with the line of cases that you're referring to, but I think the answer to your question is no. Okay. Counsel, your time has expired. I do have one housekeeping matter that I would like to ask both counsel on the Court's own time. We have recently received a document called Suggestion of Stay with respect to the Morant Corporation, to which is attached a bankruptcy court order. Do you have any advice to give us at this time with respect to how to respond? Your Honor, my understanding is that the bankruptcy court in Houston held a hearing earlier this week and determined that this case could go forward as to Morant without deciding whether or not the stay applied. It seemed everybody was in agreement that the case should go forward as to Morant. I have no further information about NRG, which the Court ordered to file an update as to the bankruptcy, but at least the AG has not been served with any update. All right. All we have is the Morant Corporation and related Morant entities. Counsel? That's consistent. If you may, since this is recorded, I'd appreciate it if you use the mic. Your Honor, it's consistent with my understanding that the bankruptcy court in the Morant case lifted the automatic stay as to Morant so that this particular case could proceed. All right. Well, are you saying that we can treat it as if it had lifted the stay in the sense that bankruptcy courts usually do that? Now, I kind of had the impression. I haven't followed it maybe as closely as I should, but it simply took a hands-off attitude that it didn't decide whether or not the automatic stay was effective in staying this litigation, and it just kind of washed its hands of it all. And it may have said we can go ahead, but I guess we go ahead at what? Our peril and your peril? Or do we really know? I think that, well, first of all, the cases are separate cases, even though they've been consolidated. But I take it you represent Morant. Do you not? No. Is Morant represented somewhere here? Well, I take it that the State has not asked for it, has not asked the bankruptcy court for a removal of any automatic stay. No, Your Honor. We would contend that the stay does not apply. But the bankruptcy court has not told us. The bankruptcy court has said that it wasn't necessary to decide and that to the extent it was necessary to decide, the stay was lifted. It's my understanding. I think we filed something on that with the court this week. Did it use that language? Did it use the language lifted? No. I haven't seen the actual order. I apologize. It's all right. Paul Stein from the Attorney General's Office. The bankruptcy court held that the stay should be modified to the extent necessary and applicable to allow this case to go forward. It further held, quite specifically, that it was not reaching the issue at this time of whether the stay would, in fact, apply. The parties all simply agreed that the appeals could go forward. All right. So it's your assurance that whatever we do, we're not running afoul of any bankruptcy court's orders or bankruptcy law? Well, I can tell you what the bankruptcy court ruled. All right. Well, under the circumstances, we're going to file an order, perhaps today, a deferring submission of this case for 14 days from today, two weeks, within which we would ask that counsel for the state and counsel for Moran, I had erroneously assumed that you were speaking for all of the parties, would notify us as to their understanding of where this bankruptcy matter is and to what extent are we free to proceed with respect at least to Moran. Any questions with respect to that? You may have. I was just going to add one more point. The bankruptcy court's order will either be entered today or no later than today. Well, all the more reason to have the record complete here. So we'll keep the record open for two weeks, within which also, Mr. Houhan, if there were some citations that you gave us today that had not been previously served, would you please take care of that as well? I'll submit that. All right. Thank you. You're very welcome. Thank you, Your Honor. The court will adjourn for the day.
judges: Hall, O'scannlain, Leavy